

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EJK:ALC  *271 Cadman Plaza East*
F.#2010R00370  *Brooklyn, New York  11201*

May 14, 2010

By Hand and ECF

The Honorable I. Leo Glasser
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Peter Gonyo
 Criminal Docket No. 10-228 (ILG)

Dear Judge Glasser:

The United States respectfully submits this letter in opposition to the defendant's appeal of his bail conditions, filed on April 27, 2010.  For the reasons that follow, the defendant's motion should be denied.

I. Background

The defendant was arraigned on February 24, 2010, after having been arrested pursuant to a sealed complaint alleging distribution of child pornography between September 30, 2009 and February 3, 2010, in violation of 18 U.S.C. § 2252(a)(2). (Compl. at 1 (attached hereto as Ex. 1).)  The complaint alleges that on September 30, 2009, the defendant, also known as "Crzyboi6969," distributed 138 computer files containing child pornography to a special agent with the Federal Bureau of Investigation ("FBI") acting in an undercover capacity over the Internet through a publicly available peer-to-peer file sharing program.  (Ex. 1 ¶¶ 3-5.) Upon execution of a search warrant in the defendant's bedroom on February 3, 2009, FBI agents located an external hard drive containing approximately 3400 visual images and 1000 video files depicting child pornography, which the defendant admitted belonged to him. (Id. ¶¶ 8-9.)

At his initial appearance, the defendant reached an agreement with the government on a bond package, which included electronic monitoring using an ankle bracelet and a $100,000 appearance bond.  (Tr. of Feb. 24, 2010, at 3-4 (attached to Def.

Mot. as Ex. B).)  The parties agreed that home detention would be imposed, rather than a curfew, because the defendant works at night as a bartender.  (Id. at 5.)

Magistrate Judge Pollak entered the bond as agreed upon by the parties.  (Docket Entry No. 6, attached to Def. Mot. as Ex. A.)  The appearance bond was secured by two suretors, namely the defendant's sister and roommate.  (Def. Mot. Ex. A at 1; Feb. 24, 2010 Tr. at 8-9.)  In addition, Judge Pollak ordered that the defendant (1) have no contact or communication with children outside of the presence of a parent or legal guardian, (2) avoid areas frequented by children, (3) not possess firearms, destructive devices or dangerous weapons, (4) undergo mental health evaluation and treatment, (5) not use a computer or access the internet other than for employment purposes, and (6) avoid all contact with victims or potential witnesses.  (Def. Mot. Ex. A at 2.)  Judge Pollak further granted authority to the U.S. Pretrial Services Agency ("Pretrial Services") to inspect and install computer monitoring software on any computer or devices with Internet access. Id.

On March 25, 2010, a grand jury returned a five-count indictment against the defendant.  (Docket Entry No. 9 (attached hereto as Ex. 2).)  Counts One through Four allege that the defendant knowingly and intentionally distributed in interstate commerce visual depictions of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  Count Five alleges that the defendant knowingly and intentionally possessed a Seagate hard drive that contained visual depictions of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

On March 26, 2010, the defendant moved Magistrate Judge Reyes to modify the conditions of his bond.  (Tr. of Mar. 26, 2010, at 1-2 (attached to the Def. Mot. as Ex. C).)  Among his requests, the defendant asked Judge Reyes to eliminate the conditions of home detention and electronic monitoring to which the defendant had agreed on February 24, 2010.[1]  (Id. at 10.)

The defendant first argued that the Court had imposed home detention and electronic monitoring on him based on the dictates of the Adam Walsh Child Protection and Safety Act of 2006 ("the Adam Walsh Act" or "the Act") but that the Act does not apply to the crimes for which he was indicted.  (Id. at 11.)

---

[1] The defendant's other requests related to his mental health treatment and evaluation and are not at issue in the instant motion.

Specifically, the defendant asserted that the Act only applies to cases involving a "minor victim" and that the distribution and possession of child pornography does not involve a "minor victim" in the sense used in the Act because neither involve a minor victim who is at imminent risk of molestation or physical harm. (Id. at 12-13.)  Second, the defendant argued that the imposition of home detention and electronic monitoring between February 24 and March 26, 2010 satisfied the Act's mandate requiring imposition of electronic monitoring and thus those conditions could be terminated.  (Id. at 14.)  In the alternative, the defendant requested that he only be subject to electronic monitoring and be released from home detention.  (Id. at 15.)

Magistrate Judge Reyes rejected both arguments.  (Id. at 13.)  Nevertheless, he modified the conditions of the defendant's bond by increasing the hours during which the defendant was permitted to be outside his house.[2]  (Id. at 23-24.)

On April 27, 2010, the defendant filed the instant motion appealing Judge Reyes's order and requesting modification of his bond to eliminate the conditions of home detention and electronic monitoring.

II.  The Adam Walsh Act's Amendments to the Bail Reform Act

Under 18 U.S.C. § 3142(a), a court may release a defendant pending trial on personal recognizance.  If the court determines that release on personal recognizance will not assure the defendant's appearance at future proceedings or will endanger the community, § 3142(c) enumerates several conditions that may be included in the court's order.  See 18 U.S.C. § 3142(c)(1)(B).

---

[2] According to Pretrial Services, the defendant was only required to be at home for the entire day on Wednesday and Sunday.  Otherwise, the defendant was permitted to be outside his home during the following hours on the following days: Monday from 12:00 p.m. to 5:00 p.m.; Tuesday 10:30 a.m. to 10:30 p.m.; Thursday from 3:30 p.m. to 1:30 a.m.; Friday from 2:00 p.m. to 10:30 p.m.; and Saturday from 2:00 p.m. to 10:30 p.m.  (Id. at 22-23.)  In order to accommodate attorney visits and other personal errands, Judge Reyes ordered that the defendant be permitted additional leave to be outside of his residence on Mondays between 9:00 a.m. and 7:00 p.m.  (Id. at 23.) Pretrial Services also represented that it had accommodated the defendant's prior requests to extend the hours during which he could be outside of his residence for work-related purposes.

3

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act (hereinafter "the Adam Walsh Act" or "the Act") "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Pub. L. 109-248 (HR 4472), 120 Stat. 587, 587 (July 27, 2006). Among other things, the Act amended 18 U.S.C. § 3142(c)(1)(B) to require that defendants charged with certain listed crimes be placed on a prescribed minimum set of release conditions:

> In any case that involves a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423 or 2425 of this title, or a failure to register offense under section 2250 of this title, any release order shall contain, at a minimum, a condition of electronic monitoring and each of the conditions specified at subparagraphs (iv) [compliance with specified restrictions on personal associations, place of abode, or travel], (v) [avoid all contact with an alleged victim or potential witness], (vi) [regular reporting to pretrial services agency], (vii) [comply with a specified curfew], and (viii) [refrain from possession of a firearm or weapon].

Id. § 216 (codified at 18 U.S.C. § 3142(c)(1)(B)).

III. Argument

In his motion, the defendant re-asserts two of the same arguments made before Judge Reyes, namely that the Act does not apply because child pornography does not involve "minor victims" and that even if it does, the imposition of electronic monitoring and home detention from February 24, 2010 to the present satisfies the Act and thus those conditions need no longer be imposed on him. (Def. Mot. at 3-4.)

The defendant also challenges the constitutionality of the Adam Walsh Act on several grounds. In particular, the defendant argues that the Act deprives him of procedural due process because it requires imposition of electronic monitoring and a curfew. (Def. Mot. at 6-8.) He further claims that the imposition in his case of electronic monitoring and home detention pursuant to the Act violates the Eighth Amendment's Excessive Bail Clause. (Def. Mot. at 8-9.) Last, he asserts that the Act facially violates the doctrine of separation of

4

powers by usurping the judiciary's ability to make individualized bail assessments. (Def. Mot. at 9.) For the reasons explained below, the Court should deny the motion in its entirety.[3]

---

[3] The government interprets the defendant's motion to assert an as-applied challenge to the Act's constitutionality under the Fifth and Eighth Amendments, as opposed to a facial attack. However, to the extent that he seeks to assert a facial constitutional challenge to the Act, his claim should be summarily rejected. The defendant cannot establish the facts necessary to succeed in a facial attack of the Act. To do so, a defendant must establish "that no set of circumstances exists under which the Act would be valid,'" United States v. Salerno, 481 U.S. 739, 745 (1987), or that the statute plainly lacks any legitimate sweep; see also United States v. Stevens, -- S.Ct. -- 2010 WL 1540082, at *8 (2010). Thus, the fact that a statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. Salerno, 481 U.S. at 745.

The defendant simply cannot establish such a sweeping claim with respect to the Adam Walsh Act under the Fifth and Eighth Amendments because there are clearly defendants charged with child pornography crimes for whom electronic monitoring and a curfew would be necessary to assure their presence at trial or ensure the safety of the community. Thus, "[a]n irrebuttable presumption of curfew and electronic monitoring would be appropriate in any case in which a judicial officer conducting a detention hearing would, in fact, find curfew and electronic monitoring to be warranted." United States v. Stephens, 594 F.3d 1033, 1038 (8th Cir. 2010) (noting that district courts across the country have imposed electronic monitoring in particular child pornography trafficking cases to stem the risk of flight and ensure community safety); United States v. Cossey, 637 F. Supp. 2d 881, 891 (D. Mont. 2009) (same). Furthermore, nothing in the Eighth Amendment's Excessive Bail Clause requires that all types of cases be bailable. Stephens, 594 F.3d at 1039 (citing Carlson v. Landon, 342 U.S. 524, 546 (1952)). Since Congress is empowered to ban bail in entire classes of cases, imposing electronic monitoring as a mandatory condition in certain cases certainly falls within its authority. Id.

    A.    <u>The Adam Walsh Act Requires Ongoing Electronic Monitoring of the Defendant</u>

        1.    <u>Charges Alleging Distribution and Possession of Child Pornography Involve "Minor Victims" Within the Meaning of the Adam Walsh Act</u>

The defendant first argues that the Adam Walsh Act does not apply to charges of distribution and possession child pornography because such charges do not involve a "minor victim." The defendant contends that the term "minor victims" under the Act refers only to children placed in "physical harm from an imminent threat." (<u>See</u> Def. Mot. at 3.) Because that interpretation is grounded in a fundamental misreading of the statute, this Court should reject it.

As an initial matter, the defendant cites no legal or statutory precedent to support his claim that the term "minor victim" refers solely to children in imminent risk of physical abuse or harm. Indeed, he cannot since the weight of authority applies a broader definition of victim as a person harmed by a crime. For example, 18 U.S.C. § 2259, which prescribes mandatory restitution upon conviction for crimes involving child pornography, defines a victim as "the individual harmed as a result of a commission of a crime." Likewise, a case cited by the defendant, <u>United States v. Kahn</u>, 524 F. Supp. 2d 1278 (W.D. Wash. 2007), defined "minor victim" as any "child harmed by a crime." <u>Id.</u> at 1282 (holding that the Act did not apply where a defendant was charged with traveling interstate to engage in illicit sexual conduct with an undercover law enforcement officer and her fictitious minor daughter).

More fundamentally, the defendant ignores specific Supreme Court and legislative findings that the children depicted in child pornography are directly harmed by both the production and dissemination of the child pornography. In affirming a conviction for distribution of child pornography, the Supreme Court explained the direct and indirect "physiological, emotion and mental" harms that children who are sexually exploited to create child pornography suffer, including the inability to develop healthy sexual and affectionate relationships with others, the creation of sexual dysfunction, and the increased potential that the child will sexually abuse other children as an adult. <u>New York v. Ferber</u>, 458 U.S. 747, 758-59 & n.9 (1982); <u>see also</u> Child Pornography Prevention Act of 1996, Pub. L. 104-208 (HR 3610), § 121, 110 Stat. 3009-26 - 3009-27 (Sept. 30, 1996) (listing Congressional findings regarding the harm child pornography inflicts on the children used in its production).

The subsequent distribution of child pornography only enhances the severity of the initial harm that the child suffered by creating an indelible record of the child's past abuse. Ferber, 458 U.S. at 759, 760 (noting that children depicted in pornography suffer throughout life with the knowledge that the record of their abuse is widely available, and this knowledge creates a lasting and severe emotional disturbance); see also Ashcroft v. Free Speech Coalition, 535 U.S. 234, 249 (2002) (stating that child pornography constitutes "a permanent record of a child's abuse" and "[l]ike a defamatory statement, each new publication . . . would cause new injury to the child's reputation and emotional well-being"); Pub. L. 110-358, § 102, 122 Stat. 4001 (Oct. 8, 2008) (same).  The distribution of child pornography therefore is "intrinsically related to the [physical] sexual abuse of children" and exacerbates the harm to the child who was forced to participate in the pornography's creation. Free Speech Coalition, 535 U.S. at 249; Ferber, 458 U.S. at 759. Accordingly, the children who are sexually abused in the production of child pornography are indeed harmed by the distribution of the pictures and videos depicting their sexual abuse.  As such they qualify as "minor victims."  Thus, the relevant portions of the Adam Walsh Act apply to child pornography cases.

Indeed, given its plain meaning, the term "minor victim" can simply be understood to distinguish between violations of those enumerated statutes that involve adult victims and those that involve child victims.  See Kahn, 524 F. Supp. 2d at 1283.  Several of the listed statutes, such as the general kidnaping statute (18 U.S.C. § 1201), transportation of another for prostitution (18 U.S.C. § 2421), and inducement of interstate travel for prostitution (18 U.S.C. § 2422), could involve either adult victims or minor victims.  Furthermore, in particular cases, a defendant's conduct in committing an enumerated crime could involve adults posing in an undercover capacity as minor victims or fictitious minor victims, rather than real children.  See, e.g., Kahn, 524 F. Supp. 2d at 1282. Thus, by including the term "minor victim," the Act ensures that its provisions apply only to those defendants who commit crimes involving children.

> 2. The Act Requires That the Defendant Be Subject to Electronic Monitoring Throughout the Duration of Pretrial Release

The defendant's claim that the bail statute permits the Court to remove the electronic monitoring condition because it

7

has been satisfied by his placement on electronic monitoring since February 24, 2010 is similarly without merit.

By its terms, § 3142 applies to orders concerning release pending trial. 18 U.S.C. § 3142(a). Section 3142(c)(1)(B) requires that "any release order" in cases involving a minor victim under the enumerated statutes "shall contain, at a minimum, a condition of electronic monitoring." Where the statute's language is plain, it should be "enforced according to its terms," United States v. Ron Pair Enter., Inc., 489 U.S. 235, 241 (1989), which here suggests <u>ongoing</u> electronic monitoring. While courts certainly retain the discretion to determine on an individualized basis the appropriate type and implementation of electronic monitoring in such cases as discussed below, the statutory language leaves no room for a release order that does not contain a condition of some type of ongoing electronic monitoring. See United States v. Kennedy, No. 09-30054, 2009 WL 1220763, at *1 (9th Cir. May 6, 2009) (holding that the district court should exercise discretion to "define a condition of electronic monitoring" appropriate to the defendant's circumstances).

Moreover, the defendant's interpretation of the Act would lead to absurd results. Under the defendant's reading, the Act could be satisfied by revoking a monitoring condition as soon as one day after it was imposed, and thus allow the defendant to go unmonitored for the remaining weeks or months of pretrial release. Because such a result would plainly serve no purpose, the defendant's interpretation should be rejected. See Securities and Exch. Comm'n v. DiBella, 587 F.3d 553, 572 (2d Cir. 2009) ("'Where an examination of the statute as a whole demonstrates that a party's interpretation would lead to absurd or futile results plainly at variance with the policy of the legislation as a whole, that interpretation should be rejected.'") (citation omitted).

B. <u>The Act Does Not Violate Procedural Due Process</u>

Contrary to the defendant's claim, the Act does not deprive him of his freedom of movement without adequate procedural safeguards. (Def. Mot. at 6-8.)

At the outset, the defendant advocates that the Court apply the wrong standard to analyze his procedural due process claim, namely the test outlined in Mathews v. Eldridge, 424 U.S. 319 (1976). Mathews was a civil case that addressed the adequacy of procedures applied when the government sought to terminate Social Security disability payments using administrative

procedures.  Id. at 323.  Because it was "conceived to address due process claims arising in the context of administrative law," the Mathews case is inapposite to resolve the defendant's claim here.  Medina v. California, 505 U.S. 437, 444-45 (1992) (declining to apply the Mathews balancing test to determine the adequacy of state procedural rules in a criminal case because it has never been explicitly relied upon to resolve due process claims in criminal cases); McKithen v. Brown, 481 F.3d 89, 107 (2d Cir. 2007) (stating that the Mathews test does not apply to "challenges to 'the process afforded during criminal proceedings themselves'").

Instead, the appropriate test was outlined in the Medina decision, in which the Supreme Court addressed the adequacy of procedures under state law for determining the competency of a criminal defendant to stand trial.[4]  McKithen, 481 F.3d at 439.  Under the Medina standard, procedures enacted by a legislature with respect to the criminal process violate due process when they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  Medina, 505 U.S. at 446 (citing Patterson v. New York, 432 U.S. 197, 201-02 (1997)).  With respect to pretrial release, courts have acknowledged that Congress can constitutionally ban pretrial release in entire classes of cases.  See Stephens, 594 F.2d at 1039 (citing Carlson, 342 U.S. at 545).  Thus, the mandatory pretrial imposition of electronic monitoring and home detention or curfew in crimes involving the indirect sexual abuse of children can hardly be said to offend a fundamental principle of justice.

---

[4] In United States v. Polouizzi, No. 06 CR 22 (JBW), 2010 WL 1048192, at *4 (E.D.N.Y. Mar. 23, 2010), the court declined to apply the Medina standard to a procedural due process challenge to the Adam Walsh Act because Medina's standard was driven by federalism and comity concerns.  This interpretation, however, reads Medina too narrowly.  As evidenced by the highly developed federal criminal code and rules, Congress too has developed "considerable expertise in matters of criminal procedure and criminal process," particularly with respect to bail.  Cf. Medina, 505 U.S. at 445; see also United States v. Gardner, 523 F. Supp. 2d 1025, 1036 (N.D. Cal. 2007) (explaining that "Congress has long had a substantial hand in shaping the bail process" dating back to the Judiciary Act of 1789).  Thus, there is no basis for using a different standard to evaluate the constitutionality of federal criminal procedures than is used to evaluate criminal procedures under state law.

Even if the Mathews test applied here, the defendant's claim would nonetheless fail. Mathews provides that in determining whether governmental action violates procedural due process, courts should balance three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Id. at 335.

First, the defendant cannot show that electronic monitoring invades any cognizable liberty or privacy interest since it merely alerts Pretrial Services when the defendant leaves his residence. See United States v. Gardner, 523 F. Supp. 2d 1025, 1033 (N.D. Cal. 2007). By "functioning as a virtual monitor standing watch outside [the defendant's] home," electronic monitoring only transmits information that would be "readily observable to the public eye." Id. at 1034. Thus, the defendant's challenge to mandatory imposition of electronic monitoring fails to satisfy the first prong of the Mathews analysis. Id. at 1033-34.

The defendant's challenge to the Act's mandatory imposition of a curfew and restrictions on travel also fails under the second prong of the Mathews test.[5] He cannot show that he "faces a substantial risk of an erroneous deprivation of []his liberty interest" because, under the Act, he remains entitled to a detention hearing, an adversarial proceeding to determine conditions of release and individualized determinations by a court regarding the extent and nature of electronic monitoring and other mandatory conditions of release. See Stephens, 594 F.3d at 1039 (stating that under the Adam Walsh Act the defendant "remains entitled to a detention hearing and a large number of individualized determinations – including an individualized determination as to the extent of any mandatory conditions of release"); Kennedy, 2009 WL 1220763, at *1 (when construed to "require the district court to exercise its discretion . . . in applying the mandatory release condition" the Act suffers "no constitutional infirmity"). The Act merely requires "a curfew and *some* electronic monitoring." Stephens, 594 F.3d at 1039

---

[5] Although the defendant is currently subject to home detention, the Act only mandates compliance with a curfew and restrictions on travel as specified by the court. See 18 U.S.C. § 3142(c)(1)(B).

10

(emphasis in original).  District courts and magistrate judges retain full discretion to determine the type, nature and extent of travel restrictions and curfews to impose, and the Act in no way limits or directs such determinations.[6]  Kennedy, 2009 WL 1220763, at *1.

For this reason, the government respectfully submits that United States v. Polouizzi, No. 06 CR 22 (JBW), 2010 WL 1048192 (E.D.N.Y. Mar. 23, 2010), United States v. Smedley, 611 F. Supp. 2d 971 (E.D. Mo. 2009), United States v. Torres, 566 F. Supp. 2d 591 (W.D. Tex. 2008), and United States v. Crowell, No. 06 CR 304S(F), 2006 WL 3541736 (W.D.N.Y. Dec. 7, 2006) were wrongly decided.[7]  At the outset, Smedley, Torres and Crowell found the Act facially unconstitutional under the due process clause.  See Smedley, 611 F. Supp. at 977; Torres, 566 F. Supp. 2d at 598-99; Crowell, 2006 WL 3541736, at *10.  As explained previously, a facial attack is unsustainable under the Salerno standard because there are clearly defendants charged with child pornography crimes for whom electronic monitoring and a curfew would be appropriate.  See Stephens, 594 F.3d at 1038 (noting that district courts across the country have imposed electronic monitoring in particular child pornography trafficking cases to stem the risk of flight and ensure community safety); Cossey, 637 F. Supp. 2d at 891 (same).  Most importantly, as the Ninth Circuit has held, the discretion allocated to courts to individually determine the appropriate parameters of electronic

---

[6] This interpretation of the Act is consistent with its language and complies with the doctrine of constitutional avoidance under which federal courts are "required to find a statute constitutional whenever possible."  United States v. Hassan, 578 F.3d 108, 120 (2d Cir. 2008).  Indeed, the Supreme Court has made clear that "'[w]hen the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'"  Id. (quoting Crowell v. Benson, 285 U.S. 22, 62 (1932)).

[7] The Eighth Circuit's decision in United States v. Stephens upholding the facial constitutionality of the Act effectively overruled in whole or in part a number of the other cases cited by the defendant, including United States v. Merritt, 612 F. Supp. 2d 1074 (D. Neb. 2009), United States v. Rueb, 612 F. Supp. 2d 1068 (D. Neb. 2009), and United States v. Vujnovich, No. 07-20126-01, 2007 WL 4125901 (D. Kan. Nov. 20, 2007). (See Def. Mot. at 5-6.)

11

monitoring and curfew for a defendant after an adversary hearing is sufficient to safeguard that defendant's liberty and privacy interests.  See Kennedy, 2009 WL 1220763, at *1; see also Stephens, 594 F.3d at 1039.  Thus, as long as the court engages in an individualized determination of the nature of the conditions imposed on a particular defendant, due process is satisfied.

In any event, the defendant in this case received adequate process in the imposition of electronic monitoring and home detention.  At the outset, the defendant originally consented to both of these release conditions.  (Tr. of Feb. 24, 2010 at 3-4.)  When the defendant did challenge the conditions, Judge Reyes considered information provided by the defendant and Pretrial Services regarding the defendant's specific circumstances, including his evening employment as a bartender and his prior difficulties in meeting with his attorney, and changed the parameters of his home detention accordingly.  (Id. at 22-23.)  Should it be deemed necessary, this Court can similarly exercise its discretion to further modify the defendant's release schedule.  Under these circumstances, the defendant enjoyed ample procedural safeguards to protect him against the undue deprivation of any liberty interest as a result of his pretrial supervision.  See, e.g., Cossey, 637 F. Supp. 2d at 890-91.

    C.    The Act Does Not Violate the Excessive Bail Clause As Applied to the Defendant

The defendant asserts that the imposition of electronic monitoring in his case constitutes excessive bail, in violation of the Eighth Amendment.  This argument too should be rejected.

The Eighth Amendment to the Constitution provides in pertinent part that "[e]xcessive bail shall not be required."  In the context of pretrial release conditions, the Supreme Court has suggested that "the Government's proposed conditions of release or detention [should] not be 'excessive' in light of the perceived evil."  Salerno, 481 U.S. at 754 (holding that the Bail Reform Act was permissible in light of Congress' goal of preventing danger to the community and assuring defendants' presence at court appearances).  Here, the government's compelling interest in curbing the defendant's risk of flight and in enforcing the other conditions of his release justifies the Act's imposition of electronic monitoring on the defendant.

First, the defendant presents a heightened risk of flight given the substantial term of incarceration that he faces

12

upon conviction.  Each of Counts One through Four of the indictment, charging distribution of child pornography pursuant to 18 U.S.C. § 2252(a)(2), carry a mandatory minimum term of five years' imprisonment and permit the court to impose a sentence of up to twenty years' imprisonment.  Although the Sentencing Guidelines are advisory, he potentially faces an estimated guidelines range of 235 to 293 months' imprisonment based on the specific characteristics of his crime, including the enormous quantity of images depicting child pornography (approximately 3400 still images and 1000 videos), the sadistic nature of some of the videos (depicting infants and bondage), and his distribution of child pornography over the internet.  Given his high potential sentence, the defendant certainly has a strong incentive to flee.  Electronic monitoring and restrictions requiring the defendant to remain at his residence during certain hours are reasonable means to ensure that he will not flee.  Moreover, the strength of the government's evidence in this case increases the likelihood of the defendant's conviction and, accordingly, incarceration.[8]

Second, electronic monitoring combined with some type of curfew or other requirement that the defendant remain at his residence during certain hours is not excessive because it assists in the enforcement of other conditions of release that the defendant does not challenge.  See Stephens, 594 F.3d at 1041 (Smith, J. concurring) (upholding the mandatory conditions against a facial attack in part because "curfew and electronic monitoring appear to be tools for enhancing enforcement ability of existing conditions rather than establishing materially different conditions").  Consistent with the need to protect the community from the risk of the defendant's continued possession and/or circulation of child pornography, Judge Pollak imposed conditions designed to preclude the defendant from using a

---

[8] This case is thus factually distinguishable from United States v. Polouizzi, No. 06-CR-22 (JBW), 2010 WL 1048192 (E.D.N.Y. Mar. 23, 2010), where the defendant in that case had successfully been receiving mental health counseling and complying with pretrial conditions and home detentions for nearly four years.  See id. at *3  Here, the defendant has only been receiving mental health treatment and complying with pretrial conditions for a few months.  Likewise, United States v. Torres, 566 F. Supp. 2d 591 (W.D. Tex. 2008), involving charges of failure to register as a sex offender, presents very different circumstances from this case since it involved a defendant who had previously timely updated his sex offender registration every ninety days for three years.  See id. at 593, 601.

computer to access the Internet, other than for employment purposes, which he might then use to obtain or distribute more child pornography, and to deny the defendant contact with children. Because of the proliferation of locations offering public access to the Internet, a curfew or home detention with electronic monitoring facilitates the enforcement of these conditions by ensuring that the defendant remains in his residence where he lacks access to a computer or the Internet, as well as to children themselves.

Third, the electronic monitoring and home detention imposed on this defendant do not unreasonably restrict the defendant's liberty in light of the government's strong interest in protecting the safety of the community and children and monitoring the defendant's compliance with his release conditions. Under the schedule that Judge Reyes fashioned to accommodate the defendant's individualized circumstances, the defendant is free to be at any location outside his residence for approximately 49 hours every week. While some of these hours are allocated to his employment as a bartender, many of the hours are set aside for the defendant to conduct personal errands, attend mental health therapy, report to Pretrial Services and engage in other personal activities. (See Tr. of Mar. 26, 2010, at 22-23, 28.) Moreover, the defendant is free to request, and the Court is free to order, exceptions from home detention to allow the defendant to engage in social or other activities. (See, e.g., id. at 26-27 (ordering Pretrial Services to alter the hours of the defendant's home detention to accommodate various social events that the defendant wished to attend).) Because the electronic monitoring and home detention conditions imposed here do not "unduly restrict [the defendant's] movements or interfere with his ability to work" given the government's interest, they are not unconstitutionally excessive. Cossey, 637 F. Supp. 2d at 890-91; see also Gardner, 523 F. Supp. 2d at 1030-31.

D.   The Act Does Not Violate the Separation of Powers

The defendant's argument that the Act violates the separation of powers doctrine also fails.

It is well established that Congress has substantial powers to regulate the imposition of bail and pretrial detention. Congressional legislation on bail was first rooted in the Judiciary Amendment of 1789, § 33, 1 Stat. 73, 91 (1789), Gardner, 523 F. Supp. 2d at 1036, and has continued to the present day, as evidenced by the Bail Reform Act of 1984. During that time, federal courts have repeatedly acknowledged Congress' substantial authority to circumscribe bail decisions by Article

14

III courts.  See, e.g., Salerno, 481 U.S. at 754-55 (finding the Bail Reform Act to be constitutional under the Excessive Bail Clause); Carlson, 342 U.S. at 545-46 (holding that Congress could specify "the classes of cases in which bail shall be allowed" and deny bail altogether for defendants accused of committing certain crimes).  Given this precedent of broad Congressional authority, there is no basis for finding that the Act is unconstitutional simply because it requires that certain conditions of release be imposed in certain types of cases.[9]  See, e.g., Polouizzi, 2010 WL 1048192, at *6 (rejecting similar separation of powers argument); Gardner, 523 F. Supp. 2d at 1036 (same).

     Indeed, even outside the Adam Walsh Act amendments, the Bail Reform Act prescribes in detail the bail determination process and outlines the specific substantive standards for determining when bail or pretrial detention is appropriate.  As the Ninth Circuit explained in Kennedy, any additional requirements imposed by the Adam Walsh Act are marginal and do not eliminate the fundamental role of the judiciary in determining the propriety of release pending trial or in individually fashioning the implementation of an appropriate set of conditions in each case.  Kennedy, 2009 WL 1220763, at *1; Cossey, 637 F. Supp. 2d at 891 (rejecting separation of powers argument); Gardner, 523 F. Supp. 2d at 1036 (same).  For all of these reasons, the Act does not contravene the doctrine of separation of powers.

---

[9] The defendant's reasoning is also inconsistent with extensive Supreme Court precedent upholding statutes that have removed judicial discretion with respect to other aspects of the criminal process.  See, e.g., Ewing v. California, 538 U.S. 11, 20 (2003) (upholding constitutionality of California's "three strikes" sentencing law."); Chapman v. United States, 500 U.S. 453, 467 (1991) ("Congress has the power to define criminal punishments without giving the courts any sentencing discretion."); Harris v. United States, 536 U.S. 545, 568-69 (2002) (rejecting a challenge to the constitutionality of a statute requiring a mandatory minimum sentence).  Certainly, the mandatory minimum sentence statutes upheld by the Supreme Court in Chapman and Ewing limit judicial discretion more than the mandatory electronic monitoring of the Adam Walsh Act.

IV.   <u>Conclusion</u>

      For all of the reasons stated above, the Court should deny the defendant's motion for modification of his bail and reject his challenges to the constitutionality of the Act.

                                Respectfully submitted,

                                LORETTA E. LYNCH
                              United States Attorney

                    By:   <u>/S/ Alexis Collins</u>
                              Alexis Collins
                              Assistant U.S. Attorney
                              (718) 254-6879

cc:   Douglas Morris, Esq. (By hand and ECF)